IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANCINE ANNA PADILLA,
*also known as* FRANCES ANNA
PADILLA,

    Plaintiff,

v.                                                                                                                  1:20-cv-00366-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Francine Anna Padilla's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 24), which was fully briefed on January 25, 2021. *See* Docs. 25, 27, 28. The parties consented to my entering final judgment in this case. Docs. 4, 17, 19. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") impermissibly "picked and chose" among the moderate mental limitations noted by non-examining state agency psychologists Dr. Jill Blacharsh and Dr. W. Miller Logan. I therefore GRANT Ms. Padilla's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

I.      **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.   Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.     Background and Procedural History

Ms. Padilla was born in 1969, completed the tenth grade, and worked as a cashier in various gas stations, retail stores, and grocery stores. AR 345, 359, 1421–22.[4] Ms. Padilla filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on April 10, 2015, alleging disability since January 15, 2014 due to fibromyalgia, carpal tunnel, post-traumatic stress disorder, depression, sciatica, plantar fasciitis of the left foot, arthritis, retinitis,[5] migraines, mood swings, and anxiety. AR 298–313, 358. The Social Security Administration ("SSA") denied her claims initially on August 12, 2015. AR 165–69. The SSA denied her claims on reconsideration on February 26, 2016. AR 172–79. Ms. Padilla requested a hearing before an ALJ. AR 180−81. On August 1, 2017, ALJ Ann Farris held a hearing. AR 41–68. ALJ Farris issued her unfavorable decision on February 14, 2018. AR 137–58. Ms. Padilla requested review by the Appeals Council. AR 233. On November 17, 2018, the Appeals Council vacated the ALJ's decision and remanded the case because the ALJ erred in declining to admit evidence that was outstanding and about which she had been timely notified. AR 160–61, 449. The ALJ held a second hearing on April 4, 2019. AR 1415–49. The ALJ rendered a partially favorable decision on May 16, 2019. AR 13–40.

The ALJ found that Ms. Padilla met the insured status requirements of the Social Security Act through September 30, 2015. AR 20. At step one, the ALJ found that Ms. Padilla had not engaged in substantial, gainful activity since January 15, 2014, her alleged onset date. *Id*. At step two, the ALJ found that Ms. Padilla had the following severe impairments: generalized

---

[4] Documents 12-1 through 12-9 and Document 13 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] Consultative examiner Dr. Raul Young-Rodriguez later clarified that Ms. Padilla meant to refer to "rhinitis symptoms of her nose" rather than retinitis. AR 639–40.

4

arthritis, carpal tunnel syndrome, obesity, adjustment disorder with anxiety and depressed mood, major depressive disorder with chronic pain, anxiety, and borderline personality disorder. *Id.* The ALJ found that Ms. Padilla's migraines, "retinitis, fibromyalgia, plantar fasciitis of the left foot, and sciatica" were non-severe impairments. *Id*. At step three, prior to July 26, 2016, the ALJ found that none of Ms. Padilla's impairments, alone or in combination, met or medically equaled a Listing. AR 20–21. At step three, beginning on July 26, 2016, the ALJ found that Ms. Padilla met the requirements of Listing 12.04 (Affective Disorders) and therefore became disabled as of this date. AR 29–31.

Because the ALJ found Ms. Padilla disabled as of July 26, 2016, the ALJ only completed the sequential evaluation process for the period before July 26, 2016. *See* AR 21–28. For the period before July 26, 2016, the ALJ found Ms. Padilla had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except this claimant can occasionally climb, balance, and stoop, but never kneel, crouch, or crawl; can frequently handle and finger; should not be required to interact with the general public; and should not be required to work any production rate pace or perform tandem tasks.

AR 21−22.

At step four, prior to July 26, 2016, the ALJ found that Ms. Padilla could not perform any of her past relevant work as a retail sales clerk or a cashier/checker. AR 27. The ALJ found Ms. Padilla not disabled at step five prior to July 26, 2016 because she could perform jobs that exist in significant numbers in the national economy—such as merchandise marker, routing clerk, and shelving clerk. AR 28. On March 13, 2018, Ms. Padilla requested that the Appeals Council review the ALJ's partially unfavorable decision. AR 233–34. On February 22, 2020, the

Appeals Council denied the request for review. AR 1–6. Ms. Padilla timely filed her appeal to this Court on April 22, 2020. Doc. 1.[6]

## IV.     Ms. Padilla's Claims

Ms. Padilla raises five arguments for reversing and remanding this case: (1) the ALJ impermissibly "picked and chose" among the moderate limitations found by non-examining state agency psychologists Dr. Jill Blacharsh and Dr. W. Miller Logan; (2) the ALJ erred in weighing the opinion of psychological consultative examiner John Owen, PhD; (3) the ALJ erred in rejecting the opinion of treating physician Dr. Alisha Parada; (4) the ALJ erred by failing to adequately consider the hearing testimony of consultative examiner Dr. Steven Baum, PhD; and (5) the ALJ erred by failing to account for Ms. Padilla's subjective allegations of pain, rendering the RFC unsupported by substantial evidence. *See* Doc. 24 at 2, 13–26. The Court remands because the ALJ impermissibly "picked and chose" among the moderate mental limitations noted by Drs. Blacharsh and Logan. The Court does not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V.     Analysis

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. §§ 404.981, 416.1481; *see also* AR 2.

a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). "It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161.

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

### A. The ALJ Erred by Failing to Either Incorporate, or Explain Why She Rejected, Moderate Mental Limitations Noted in the Medical Opinion of Dr. Jill Blacharsh and Dr. W. Miller Logan.

Ms. Padilla argues that the ALJ failed to account for all the moderate limitations in non-examining state agency consultant Drs. Blacharsh's and Logan's Mental Residual Functional Capacity Assessment ("MRFCA"). Doc. 24 at 13–15. Specifically, she argues that the ALJ failed to account for the following limitations noted by both doctors: (1) a moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (2) a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. *Id*. at 14 (citing AR 80, 93, [113]-14, [132]-33).

In response, the Commissioner proffers two arguments: (1) the "ALJ did not fully adopt the opinions, and in fact explained why not all of the opined limitations were included in the RFC," and (2) because Drs. Blacharsh and Logan noted these moderate limitations in Section I of the MRFCA and still concluded in Section III[7] that Ms. Padilla could "perform unskilled work with limited social interaction," the omitted limitations are not inconsistent with the RFC. Doc. 25 at 12–13. The Court finds the Commissioner's arguments unpersuasive and agrees with Ms. Padilla that the ALJ was required either to include, or to explain her reasons for rejecting, the moderate limitations noted in Section I of Drs. Blacharsh's and Logan's opinions.

---

[7] Mental Residual Functional Capacity Assessment ("MRFCA") forms are completed by psychological consultants through the SSA's Electronic Claims Analysis Tool (eCAT). Prior to eCAT, consultants completed special form SSA-4734-F4-SUP. That form was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and courts have continued to refer to the checkbox portion of each MRFCA as "Section I," and the "narrative" portion(s) as "Section III." In addition, the instructions contained in POMS DI 24510.060–65 on how to complete SSA-4734-F4-SUP still apply to the eCAT version of the form.

An ALJ is required to consider and discuss both Section I and Section III findings. As the Honorable Stephan M. Vidmar thoroughly explained in his opinion rejecting similar arguments that an ALJ is not required to consider Section I findings, the Program Operations Manual System ("POMS"),[8] regulations, and case law require the ALJ to address all of a doctor's findings, not just those in Section III. *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1158–66 (D.N.M. 2016).[9] An ALJ may rely exclusively on the Section III findings only if the "Section III narrative does not contradict any Section I limitations and describes the effect each

---

[8] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

[9] This District is split in its interpretation of *Smith v. Colvin,* 821 F.3d 1264 (10th Cir. 2016) and whether that case held that an ALJ need not consider moderate limitations noted in Section I of the MRFCA. *Compare Silva v. Colvin*, 203 F. Supp. 3d 1153, 1163 n.4 (D.N.M. 2016):

> Rather than overruling *Haga* and *Frantz* (by holding that ALJs may ignore a doctor's Section I findings), the Court reads *Smith* as addressing moderate limitations that may be adequately accounted for in an ALJ's RFC limitation to unskilled (or simple) work. *Smith*, 821 F.3d at 1268–69 (holding that the ALJ's RFC assessment adequately accounted for the doctor's assessment of certain moderate functional limitations). In other words, the Court interprets *Smith* as being more about unskilled work, and less about Section I versus Section III findings.

with *Rush v. Saul*, 389 F. Supp. 3d 957, 969 (D.N.M. 2019):

> Based on *Smith*, the Court rejects Ms. Rush's argument that, once the ALJ gave great weight to Dr. Walker's opinion, the ALJ was required to either adopt Dr. Walker's Section I moderate limitations or, for each moderate limitation, explain why he did not adopt that limitation. *Smith* mandates affirmance here because the doctor's narrative RFC and the ALJ's RFC [found in Section III] are consistent.

*See also Mills v. Berryhill*, No. 16cv573 CG, 2017 WL 3149414, at *10 (D.N.M. June 9, 2017) ("In *Smith*, the Tenth Circuit held the ALJ's RFC adequately incorporated all of the claimant's functional limitations, and the Tenth Circuit did not base its holding on the fact that the ALJ relied on Section III rather than Section I. 821 F.3d at 1269.").

9

Section I limitation would have on the claimant's mental RFC." *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished). The ALJ "should [not] turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished). If a doctor's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished); *see also Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("[Section I] observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations.").

Under *Haga* and *Frantz*, the ALJ has a duty to explain why she adopted some of Drs. Blacharsh's and Logan's limitations while rejecting others. When an ALJ relies solely on a doctor's Section III narrative, this Court must analyze whether the Section III narrative "adequately encapsulates" the moderate limitations in Section I of the doctor's opinion. *See Carver*, 600 F. App'x at 619. In other words, the Court must determine whether the ALJ adequately accounted for the limitations noted by Drs. Blacharsh and Logan in the RFC assessment. If not, the Court must determine whether the ALJ adequately explained why she rejected the missing limitations.

In Section I of the MRFCA, both Drs. Blacharsh and Logan found that Ms. Padilla had the following moderate limitations:

### Sustained Concentration and Persistence

- Moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitation in the ability to work in coordination with or in proximity to others without being distracted by them;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

### Social Interaction

- Moderate limitation in the ability to interact appropriately with the general public;
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitation in the ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes.

AR 80, 93, 113–14, 132–33.

In Section III of the MRFCA (under the heading "Additional Explanation") Drs. Blacharsh and Logan summarized Ms. Padilla's mental health treatment records and function report and offered the following opinions:

> Claimant is considered credible. Her other medical records are consistent with her Function Report.
>
> Claimant has a history of depression and it seems like a majority of her problems stem from problems getting along with others.
>
> Claimant can do unskilled work. She would do better with limited interpersonal interactions.

AR 82, 95, 115, 134.

The ALJ discussed Drs. Blacharsh's and Logan's opinions[10] in a single paragraph of her RFC analysis:

> Jill Blacharsh, M.D., State agency psychological consultant, opined in August 2015 that the claimant had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintain[ing] concentration, persistence, or pace; and no repeated episodes of

---

[10] The ALJ discussed the opinions by the two State agency psychological consultants together. AR 25. Although the opinions were prepared by two different doctors on two different dates, they are essentially identical. *Compare* AR 79–82, 92−95 (opinion of Jill Blacharsh, M.D. on 8/11/2015) *with* AR 113–15, 132–34 (opinion of W. Miller Logan, M.D. on 2/25/2016).

11

> decompensation. The consultant further opined that the claimant could do unskilled work and would do better with limited interpersonal interactions (Ex. B4A/8, 12). In February 2016, W. Miller Logan, M.D., State agency psychological consultant, opined Dr. Blacharsh's opinion (Ex. B8A/9, 17). I have considered these opinions and give them significant weight. I note that the doctors have had opportunity to review the record and are familiar with Agency rules and regulations. The treatment record shows that the claimant had abnormal mood and limited recall. The claimant also had inappropriate behavior during examination on occasion. However, she generally did not exhibit symptoms of extreme mood swings, was cooperative during evaluation, and could perform serial sevens. She was also observed to have adequate ability to follow simple instructions (Ex. B4F /30-31; B6F/l-4; B7F/2; B8F/l-3). Therefore, the above opinions are granted significant weight, as they are mostly supported by objective evidence of record.

AR 25. The only mental limitations the ALJ included in Ms. Padilla's RFC were that she "should not be required to interact with the general public; and should not be required to work any production rate pace or perform tandem tasks." AR 22.

As an initial matter, the Court notes that the ALJ did not even mention the moderate limitations contained in Section I of Drs. Blacharsh's and Logan's opinions. The mental limitations the ALJ discussed ("mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintain[ing] concentration, persistence, or pace; and no repeated episodes of decompensation") are contained in Drs. Blacharsh's and Logan's Psychiatric Review Technique ("PRT") forms. *See* AR 78, 91, 107, 126. The PRT and the MRFCA are not interchangeable and serve distinct purposes in the disability determination process.

> The PRT is used to assess mental impairments for purposes of steps two (identifying severe impairments) and three (rating severity for the listings). *See generally* 20 C.F.R. §§ 404.1520a, 416.920a. It addresses the B and C criteria of the listings for mental impairments, using four categories of limitation stated in the B criteria: restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; and episodes of decompensation. . . .
>
> The MRFCA, on the other hand, addresses twenty specific mental functions relevant to the vocational determinations required at steps four and five. . . .

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings . . . and summarized on the [PRT].
>
> SSR 96–8p, 1996 WL 374184, at *4 (July 2, 1996).  Therefore, the PRT has overall ratings for various categories, including maintaining concentration, persistence, or pace, while the MRFCA has more focused categories for use in determining an RFC.

*Lull v. Colvin*, 535 F. App'x. 683, 685 (10th Cir. 2013) (unpublished).  Other than the mental limitations noted on Drs. Blacharsh's and Logan's PRT forms, the only other part of Drs. Blacharsh's and Logan's opinions that the ALJ discussed was their Section III findings that Ms. Padilla could "do unskilled work" and "would do better with limited interpersonal interactions."  AR 25, 82, 95, 115, 134.

The ALJ did not address at least two moderate mental limitations in Section I of Drs. Blacharsh's and Logan's opinions.[11]  In Section I, both doctors found that Ms. Padilla had moderate limitations in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and in her "ability to accept instructions and respond appropriately to criticism from supervisors."  AR 80, 93, 113–14, 132–33.  The doctors' Section III findings do not account for these two moderate limitations.  In Section III, without any narrative explanation about these moderate limitations, both doctors found that Ms. Padilla could engage in "unskilled work" and that she "would do better with limited interpersonal interactions."  AR 82, 95, 115, 134.  The ability to "maintain regular attendance and be punctual within customary tolerances" and the ability "ability to accept

---

[11] The parties do not analyze every moderate limitation, and the Court will not do so either.

13

instructions and respond appropriately to criticism from supervisors" are work-related "mental abilities needed for any job" (including unskilled jobs), and the ALJ must adequately address them in the RFC.[12]  *See* POMS 25020.010 (B)(2)(a), (c), (B)(3)(e), (k).  Because Drs. Blacharsh's and Logan's Section III narratives do not "adequately encapsulate" their Section I findings of a moderate limitation in these critical areas, and because the ALJ failed to explain why she rejected these limitations, remand is required.  *See Carver*, 600 F. App'x at 619.

The Commissioner argues that the "ALJ did not fully adopt the opinions, and in fact explained why not all of the opined limitations were included in the RFC."  Doc. 25 at 13.  The Commissioner claims that the ALJ noted that the opinions of Drs. Blacharsh and Logan "were

---

[12] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945."  SSR 96-8p, 1996 WL 374184, at *1.  This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities.  An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to:  understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").  In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record.  SSR 96-8p, 1996 WL 374184, at *2.  The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'"  *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

14

not fully consistent with the medical evidence as examination findings suggested she had fewer limitations that opined." *Id*.  The Commissioner then offers select "medical evidence in the record" that could support this finding.  *See id*. at 13–14.  The problem with the Commissioner's argument is that the ALJ never stated that the opinions of Drs. Blacharsh and Logan were not consistent with the medical evidence.  *See* AR 25.  In addition, the ALJ gave the doctors' opinions in their entirety "significant weight."  *Id*.  The ALJ neither rejected any of the moderate limitations in the doctors' opinions, nor offered any explanation for doing so.  In fact, the ALJ never mentioned the moderate limitations the doctors found in Ms. Padilla's "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," or in her "ability to accept instructions and respond appropriately to criticism from supervisors."  *See* AR 25.  The Commissioner's argument is a post hoc rationalization.  The Court cannot rely on explanations not provided by the ALJ.  *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

The Commissioner claims her argument is not a post hoc rationalization because she "is not providing any additional rationale, but merely highlighting that the record contains significant evidentiary support for the ALJ's stated rationale." Doc. 25 at 14 n.4.  As discussed above, the Court does not agree.  The Commissioner provides reasons and rationales not provided by the ALJ.[13]  Finally, the Court does not agree with the Commissioner's assertion that

---

[13] The Commissioner's citation to *Hays v. Berryhill*, 694 F. App'x 634, 637 (10th Cir. 2017) (unpublished) is not on point. Doc. 25 at 14 n.4.  *Hays* involved an EAJA fee dispute and the court was analyzing whether the Commissioner's position had been "substantially justified." 694 F. App'x at 637.  The Commissioner argued harmless error because "the missing findings . . . were apparent from the ALJ's decision." *Id*.  The court found that "[t]his is not a case in

the ALJ did not "fully adopt the opinions" of Drs. Blacharsh and Logan. The ALJ gave "significant weight" to the opinions in their entirety. If the ALJ did not intend to fully adopt the opinions, the ALJ must explain what parts she rejected and why.

The Commissioner's second argument—that because Drs. Blacharsh and Logan noted moderate limitations in Section I of the MRFCA and still concluded in Section III that Ms. Padilla could "perform unskilled work with limited social interaction," the omitted limitations are not inconsistent with the RFC—also is without merit. The Commissioner argues that it is sufficient if the ALJ adopts an RFC that is consistent with Drs. Blacharsh's and Logan's Section III findings. Doc. 25 at 13. The Commissioner essentially argues that the ALJ need only address the Section III limitations. *Id.* (quoting *Lee*, 631 F. App'x 541 ("Having adopted the limitations described in section III of the MRFCA, the ALJ was not also required to specifically adopt or discuss each individual limitation described in section I.")). The Commissioner, however, ignores *Lee's* admonishment that the ALJ "should [not] turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee*, 631 F. App'x 541; *see also Carver*, 600 F. App'x 619 (If a doctor's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding."). The Commissioner does not explain how the moderate limitations in Section I are described or encapsulated in Section III of Drs. Blacharsh's and Logan's opinions. *See* Doc. 25 at 12–14.

---

which the Commissioner supplied new reasons for supporting the ALJ's RFC finding." *Id.* Unlike *Hays*, the instant case does not involve substantial justification or harmless error analysis, and the Commissioner has supplied new reasons for supporting the ALJ's RFC finding that are not apparent from the ALJ's decision.

16

Instead, the Commissioner suggests that although the doctors noted these moderate limitations, but still concluded that Ms. Padilla was capable of unskilled work with limited interpersonal interactions, there is no conflict between Section I and Section III.  This argument is a non sequitur.

"[A] moderate impairment is not the same as no impairment at all."  *Haga*, 482 F.3d at 1208.  Thus, "moderate limitations must be accounted for in the RFC finding."  *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished).  Some moderate mental limitations can be addressed by limiting a claimant to particular kinds of work.  *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015).  In *Vigil*, the Tenth Circuit held that the ALJ adequately accounted for the claimant's moderate limitations in concentration, persistence, and pace by "limiting him to unskilled work activity."  805 F.3d at 1204.  The moderate limitations at issue in *Vigil* were limitations in the claimant's ability to "perform complex tasks."  *Id.* at 1203–04.  The ALJ in *Vigil* noted that the claimant retained the capacity to "perform at least simple tasks."  *Id.* at 1204.  Because unskilled work only requires the ability to understand, remember, and carry out **simple** instructions and make **simple** work-related decisions, the Court in *Vigil* held that the RFC limiting the claimant to unskilled work adequately addressed the claimant's limitation in his ability to perform complex tasks.  *Id.*  The court in *Vigil* was careful to point out, however, that "[t]here may be cases in which an ALJ's limitation to unskilled work does not adequately address a claimant's mental limitations."  *Id.* (citing *Chapo*, 682 F.3d 1285, 1290 n.3).  Thus, *Vigil* does not stand for the broad proposition that a limitation to unskilled work adequately addresses **all** moderate limitations in concentration, persistence, and pace.

The Tenth Circuit has held that moderate limitations in concentration, persistence and pace *may* be accounted for in an RFC that restricts a claimant to performing simple tasks or

unskilled work. *See Lee*, 631 F. App'x at 541−42. But this is not always the case. "A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments." *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) (unpublished) (citing *Chapo*, 682 F.3d at 1290 n.3 (a restriction to "simple work" is a vague catch-all term which is insufficient to adequately account for mental limitations)).

In this case, unlike *Vigil*, the claimant's moderate mental limitations are not adequately addressed by an RFC limiting her to unskilled work, or by any of the limitations the ALJ included in her RFC. Drs. Blacharsh and Logan assessed Ms. Padilla with moderate limitations in her ability to "maintain regular attendance, and be punctual within customary tolerances," and in her "ability to accept instructions and respond appropriately to criticism from supervisors." These are mental abilities needed for any job. POMS 25020.010 (B)(2)(a), (c). These are mental abilities that are "critical" for performing even unskilled work. POMS 25020.010 (B)(3)(e), (k). Because these abilities are a general requirement for all jobs, the ALJ must address these limitations in formulating Ms. Padilla's RFC. *See Bowers v. Astrue*, 271 F. App'x 731, 733–34 (10th Cir. 2008) (unpublished) (noting that a moderate limitation in another ability required for all jobs—the ability to respond appropriately to changes in a routine work setting—could decrease the ability to perform simple or unskilled work because it is a general work requirement). Thus, unlike *Vigil*, which discussed a limitation in the ability to do complex tasks—a mental ability not required to perform unskilled work—the moderate limitations at issue in this case are critical to the performance of unskilled work. The ALJ erred by not incorporating these limitations into Ms. Padilla's RFC or explaining her reasons for rejecting them.

## VI. The Court Declines to Order an Immediate Award of Benefits.

Ms. Padilla asks the Court to grant her an immediate award of benefits. Doc. 24 at 26. In support of this request, Ms. Padilla points out that this case has been pending for over six years and involves a "closed period" for which the medical evidence is complete.[14] *Id*. The Commissioner argues that remand is the appropriate remedy. Doc. 25 at 19. The Court agrees with the Commissioner.

"When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding which remedy is appropriate, the Court considers both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart,* 468 F.3d 615, 626 (10th Cir. 2006) (internal citations, quotations and alterations omitted). A remand for an immediate award of benefits "is appropriate when the record fully supports a determination that [plaintiff] is disabled as a matter of law and is entitled to the benefits for which he [or she] applied." *Sorenson v. Bowen,* 888 F.2d 706, 713 (10th Cir. 1989).

Although this case has been pending for over six years, a remand for an award of immediate benefits is not appropriate. On remand, the ALJ will need to reweigh the opinions of Drs. Blacharsh and Logan. *See Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996) (finding remand appropriate "[b]ecause the appeals court does not reweigh the evidence in social security cases"). Consequently, the Court remands this case.

---

[14] The "closed period" runs between Ms. Padilla's alleged onset date of January 15, 2014 and the date the ALJ found her disabled, July 26, 2016.

19

## VII. Conclusion

In assessing Ms. Padilla's RFC, the ALJ erred in failing to incorporate or to explain why she rejected at least two moderate limitations assessed by Drs. Blacharsh and Logan: the moderate limitation in Ms. Padilla's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and the moderate limitation in her ability to accept instructions and respond appropriately to criticism from supervisors. The Court remands so that the ALJ can remedy these errors. The Court does not address Ms. Padilla's other claims of error as they "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 24) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent